IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PIERRE HODGINS, ) | |
| ) | Case No. 1:02-CV-01454 |
| Plaintiff, ) | |
| ) | Judge Ann Aldrich |
| v. ) | |
| ) | Magistrate Judge Nancy A. Vecchiarelli |
| CARLISLE ENGINEERED PRODUCTS, INC., ) | |
| et al., ) | |
| ) | MEMORANDUM AND ORDER |
| Defendants. ) | |
| ) | |

Before the court is plaintiff Pierre Hodgins's ("Hodgins") motion for summary judgment [Docket No. 117] on defendant Carlisle Engineered Products, Inc.'s ("CEP") counterclaims. For the following reasons, the court grants the motion and enters judgment in favor of Hodgins on all four counterclaims.

**I.      Background**

The alleged environmental violations at issue in this case involve a facility in Middlefield, Ohio (the "Middlefield facility") that manufactured rubber products for the automotive industry that is owned and operated by CEP. Approximately 11,000 gallons of waste, some of which was hazardous, were generated at the Middlefield facility from its opening until 1980. That waste was stored in drums at the Middlefield facility until at least 1986, then removed in 1987. CEP never obtained a permit to store waste at the facility and disposed of waste generated there after 1980 through a different method.

In 1983 and in 1994, the Ohio Environmental Protection Agency ("OEPA") inspected the Middlefield facility, and directed CEP to undertake a "generator closure" of areas where CEP had previously stored the drums containing hazardous and non-hazardous waste in 1994. CEP agreed to close those areas, with OEPA overseeing the process. The United States Environmental Protection Agency ("USEPA") also investigated the Middlefield facility in 1994, and both USEPA and OEPA have

kept an eye on the facility since then.

CEP also undertook an internal investigation following the USEPA and OEPA investigations and found two separate areas of groundwater contamination - - one related to the Middlefield facility, and one to the south of the Middlefield facility. The source of the contamination for the former area, known as the "Northern Plume", is the Middlefield facility. The source for the latter area, known as the "Southern Plume", remains unclear. CEP's investigation of the southern part of its property has failed to uncover the source of the Southern Plume. However, hazardous chemicals have been found in groundwater taken from wells on CEP's property, as well as Hodgins's property, which lies just to the east of the southern part of CEP's property, southeast of the Middlefield facility. The parties do not dispute the fact that groundwater in the area in question generally flows from the southwest to the northeast.

In its counterclaim, CEP alleges that releases of hazardous chemicals on Hodgins's property are responsible for the Southern Plume. CEP states four claims in its counterclaim: (1) cost recovery under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607; (2) contribution under CERCLA, 42 U.S.C. § 9613; (3) nuisance under Ohio common law; and (4) trespass under Ohio common law.

Hodgins moved for summary judgment against each of those claims, alleging that no evidence has been produced that demonstrates that a release of hazardous chemicals occurred on Hodgins's property.

**II. Discussion**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party

bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004). If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this Court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

CEP's first counterclaim, for cost recovery under CERCLA, has four elements:

> In order to establish a prima facie case for cost recovery under § 107(a), a plaintiff must prove four elements: (1) the site is a "facility"; (2) a release or threatened release of hazardous substance has occurred; (3) the release has caused the plaintiff to incur "necessary costs of response"; and (4) the defendant falls within one of the four categories of [potentially responsible partie]s.

*Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 347-48 (6th Cir. 1998) (citations omitted). The first element of CEP's second counterclaim, for contribution under CERCLA, is that Hodgins is liable for cost recovery. *Kalamazoo River Study Group v. Rockwell Int'l Corp.*, 274 F.3d 1043, 1049 (6th Cir. 2001).

In his motion for summary judgment, Hodgins argues that CEP has failed to prove the second element, that a release of hazardous substances occurred on Hodgins's property. CEP responds that (1) the presence of hazardous substances on Hodgins's property along with (2) the evidence indicating that CEP is not the source of the Southern Plume establishes the second element of CEP's counterclaims so as to avoid summary judgment, citing *Weyerhauser Corp. v. Koppers Co.*, 771 F.Supp. 1406 (D. Md. 1991). In that case, Weyerhauser produced substantial evidence that the hazardous chemicals present "did not migrate onto the property from some other parcel," and that Koppers was the only possible source of the chemicals. *Id.* at 1411.

In this case, there is no evidence that any of the hazardous chemicals detected were ever released on Hodgins's property, or that Hodgins's property was a possible source of those chemicals, much less the only possible source. More importantly, because Hodgins's property lies to the east of CEP's property, specifically to the east of contamination discovered on CEP's property, the flow of groundwater makes CEP's assertion that a release of chemicals on Hodgins's property caused the Southern Plume incomprehensible at best. Put simply, because the groundwater flows *from* CEP's

-4-

property *to* Hodgins's property, and the contamination from the Southern Plume travels by means of that flow, no release on Hodgins's property could have migrated to and caused the contamination on CEP's property. CEP attempts to respond, arguing that the groundwater level on Hodgins's property is higher than that on CEP's property, making Hodgins's property actually "upstream". However, CEP cites no evidence, testimony, or expert report to support that assertion, and all of the evidence indicates that groundwater flow over Hodgins's land is southwest-to-northeast just as it is generally in that area.

As for CEP's nuisance and trespass counterclaims under Ohio common law, both of those claims require evidence establishing some sort of action by Hodgins, whether it is some "act . . . either caus[ing] injury to the property of another, [or] obstruct[ing] the reasonable use or enjoyment of [that] property" or "unauthorized entry upon the land of another." *Crown Prop. Dev. v. Omega Oil Co.*, 681 N.E.2d 1343, 1350 (Ohio Ct. App. 1996) (citations omitted). CEP has produced no evidence establishing any sort of act by Hodgins related to the Southern Plume, and the undisputed groundwater flow evidence makes it clear that Hodgins could not be responsible for the Southern Plume.

Therefore, the court finds that there is no genuine issue of material fact concerning Hodgins's responsibility for the Southern Plume, that CEP has not produced any evidence that supports its counterclaims that Hodgins is in some way responsible for the Southern Plume, and that the undisputed evidence concerning groundwater flow establishes that Hodgins is not responsible for the Southern Plume. Hodgins's motion for summary judgment is therefore granted.

**III.     Conclusion**

For the foregoing reasons, the court grants Hodgins's motion for summary judgment [Docket No. 117]. Judgment is entered for Hodgins on all of CEP's counterclaims against him. The court sets a status conference for Friday, December 1, 2006 at 11:00 a.m. in Chambers 17B, 801 W. Superior Avenue, Cleveland, Ohio.

IT IS SO ORDERED.

    /s/Ann Aldrich
ANN ALDRICH
UNITED STATES DISTRICT JUDGE

**Dated: October 16, 2006**